PAUL NGUYEN
LAURA NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
TELEPHONE: (714) 360-7602

Plaintiffs
  In Pro Persona

BY:
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
2009 JUN 25  PM 2: 03
FILED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

PAUL NGUYEN, an individual; and
LAURA NGUYEN, an individual,

                    Plaintiffs,

    v.

Chase Bank USA, N.A.; Chase Home
Finance, LLC; First American Loanstar
Trustee Services; Fidelity National Title
Company; and DOES 1 through 50,
inclusive,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  CV09-4589 CBM (AJWx)

**COMPLAINT FOR RECISSION
AND DAMAGES, 15 U.S.C. § 1635,
12 C.F.R. § 226, 12 U.S.C. § 2601,
ET.SEQ., AND CALIFORNIA LAWS**

**DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs PAUL NGUYEN AND LAURA NGUYEN
(hereinafter "Plaintiffs" or "NGUYEN") file this civil action alleging that their
federal and state rights were violated as follows:

## INTRODUCTION AND NATURE OF CONTROVERSY

1. This is a Truth-in-Lending and Real Estate Settlement Procedure Act case in
   which Plaintiff Paul Nguyen was fraudulently induced to enter into a loan and

PAUL NGUYEN

16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

PAUL NGUYEN and his wife executed a deed of trust encumbering their home ("Mortgage Loan") through the use of unfair and deceptive acts and practices in violation of the Truth-in-Lending Act and the Real Estate Settlement Procedures Act, as well as state laws. Fraudulent representations concerning the payment terms of the Mortgage Loan were made to the Plaintiffs to induce PAUL NGUYEN to enter into the Mortgage Loan. In addition, material disclosures in relation to the Mortgage Loan, required pursuant to the Truth-in-Lending Act and its implementing Regulation, and required pursuant to the Real Estate Settlement Procedures Act and its implementing Regulation, were concealed from the NGUYEN. Nor were the NGUYEN provided with a proper number of notices of their right to cancel the transaction within the time period required by law, all in violation of PLAINTIFFS' clearly established rights under federal and state statutory and common law. In addition, Defendant Chase Bank USA N.A., or its agent, intentionally forged the signature of Plaintiff LAURA NGUYEN onto the Deed of Trust and other documents related to the Mortgage Loan with the intention of harming the Plaintiffs as part of a scheme to prevent the Plaintiffs from knowing the true term and conditions of the Mortgage Loan prior to entering into that Mortgage Loan and preventing the Plaintiffs from rescinding the Mortgage Loan if and when they ever discovered the true terms and conditions of the Mortgage Loan by using the forged Deed of Trust as the basis for arguing that the Plaintiffs' right to rescind the Mortgage Loan under federal law had expired.

2. This action seeks rescission of the Mortgage Loan and statutory, compensatory, and punitive damages to vindicate the violation of the NGUYEN's federal and state rights.

3. The NGUYEN also seeks punitive damages against the Defendant in order to punish and set example for the wrongful conduct in violating federal and state laws resulting in injury and damages to the NGUYEN.

4. The NGUYEN also seek reasonable costs of litigation, including, but not limited to, attorneys' fees.

## JURISDICTION AND VENUE

5. This action arises under 15 U.S.C. § 1635, 12 C.F.R. § 226, 15 U.S.C. §§ 2601 and 2614, 12C.F.R. § 3500, and under California statutory and common law.

6. This Court has jurisdiction over the Federal claims in this action based on 18 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law. This Court also has supplemental jurisdiction over the pendant state law claims because the state law claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

7. The unlawful conduct, illegal practices, and acts complained of alleged in this complaint were all committed in the Central District of California and the involved real property is located in the Central District of California. Therefore, venue properly lies in this District, pursuant to 12 U.S.C. § 2614 and 28 U.S.C. § 1391(b).

## PARTIES

### Plaintiff

8. Plaintiff PAUL NGUYEN and LAURA NGUYEN are resident of Westminster, California, and the real property secured by a deed of trust under the Mortgage Loan is located in Westminster, California.

### Defendants

9. Plaintiffs are informed and believe, and thereon allege, that Defendant Chase Bank USA, N.A. ("Chase") is a national banking institution whose exact business form is unknown and at all times mentioned herein was conducting business in California. Plaintiffs are informed and believe that Defendant Chase Bank USA, N.A. is the owner of the Mortgage Loan.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

10. Plaintiffs are informed and believe, and thereon allege, that Defendant Chase Home Finance LLC ("Chase Home Finance") is a wholly owned subsidiary of Chase and at all times mentioned herein was conducting business in California. Plaintiffs are informed and believe that Defendant Chase Home Finance is the servicer of the Mortgage Loan.

11. Plaintiffs are informed and believe, and thereon allege, that Defendant First American Loanstar Trustee Services ("Trustee Services") whose exact business form is unknown and at all times mentioned herein was conducting business in California. Plaintiffs are informed and believe that Defendant Trustee Services is the trustee of the Mortgage Loan.

12. Plaintiff are informed and believe, and thereon allege, that Defendant Fidelity National Title Company ("Fidelity") whose exact business form is unknown and at all times mentioned herein was conducting business in California. Plaintiffs are informed and believe that Defendant Fidelity is the title insurance of the Mortgage Loan.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13. Sydney Funding, on or about October 2007, was a licensed real estate broker which license was issued by the California Department of Real Estate and the President of Sydney Funding, also a California licensed real estate broker at the time of the events and happenings referred to herein.

14. Sydney Funding represented to Plaintiff Paul Nguyen that the company (i) were properly licensed under California laws and (ii) possessed expertise as a mortgage broker in real estate lending that qualified to serve as Plaintiff Paul Nguyen's mortgage broker, and to find a residential mortgage loan best suited to Plaintiff Paul Nguyen's financial situation and needs, and to explain to Plaintiff the details of any proposed residential mortgage loan.

15. As a direct and proximate result of Sydney Funding's representations that it was properly licensed and possessed expertise as a mortgage broker, Plaintiff Paul

Nguyen entered into an oral contract ("Oral Contract") with Sydney Funding whereby Sydney Funding would act as Plaintiff's Paul Nguyen's mortgage broker for the purpose of obtaining a residential mortgage loan secured by the Real Property with terms satisfactory to the Plaintiffs from Chase.

16. On or about December 7, 2007, Paul Nguyen entered into the Mortgage Loan with Chase as lender by signing the documents requested of him for signature by the notary.

17. Plaintiff Paul Nguyen executed a promissory note and security agreement for that purpose, which transaction is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 226.2.6 A true and accurate copy of the combined note and security agreement ("Deed of Trust") is attached hereto as Exhibit "A", and is hereby incorporated by reference.

18. Plaintiff Laura Nguyen never executed a promissory note and security agreement for that purpose.

19. On or about January 2009, Plaintiffs discovered forged signature of Laura Nguyen to the Deed of Trust, which is attached hereto as Exhibit "B".

20. Plaintiff Laura Nguyen never received two (2) copies of a Notice of Right to Cancel from any person or entity, or from the notary.

21. Plaintiff Laura Nguyen are informed and believe, and thereon allege, that all purported signatures of Plaintiff Laura Nguyen that were never affixed by her and is forgeries on the deed of trust in connection with the Mortgage Loan were affixed on said documents by Chase or its agents.

22. As a result of the failure of Chase to provide all of the disclosures required by state and federal law, and as a result of the false, fraudulent, and/or deceitful representations made to the Plaintiffs concerning the terms of the Mortgage Loan, Plaintiffs are entitled to rescind the Mortgage Loan.

23. On April 6, 2009, Plaintiffs sent via U.S. Post certified mail, notified Chase of their rescission of the loan under TILA and offer to tender.  Additional copies

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

were also sent via U.S. Post certified mail to Chase Home Finance LLC, c/o First American Loan Star Trustee Services and JP Morgan Chase Bank, NA c/o Chase Home Finance LLC. Copies of such notices are attached herewith as Exhibit "C".

24. Again, on April 13, 2009, Plaintiffs again sent via U.S. Post certified mail, notified Chase of their rescission of the loan under TILA and offer to tender. Copies of such notices are attached herewith as Exhibit "D".

25. Plaintiffs are also informed and believe, and thereon allege, that the Defendant and one or more of its agents conspired to withhold disclosing the Truth-in-Lending Disclosure Form required by federal law and that, in furtherance of said conspiracy, the Defendant forged Plaintiff Laura Nguyen's signatures on the Deed of Trust or authorized and ratified such forged signatures.

26. That the Mortgage loan entered into is a federally related mortgage loan as that term is defined in the Real Estate Settlement Procedures Act at 12 U.S.C. § 2602(1).

27. In addition to acting as the mortgage broker and Chase's agent in the transaction resulting in the entering into of the Mortgage Loan, Sydney Funding also acted as the Settlement Agent in connection with the consummation and closing of the Mortgage Loan through its wholy owned subsidiary, Nexus Escrow.  Neither Sydney Funding nor Chase ever disclosed to the Plaintiffs that the entity acting as Mortgage Broker would also be acting as the Settlement Agent and would be receiving fees and other funds in connection with such role at any time prior to the delivering of the final Settlement Statement to Plaintiff after entering into the Mortgage Loan.  Plaintiffs are informed and believe, and thereon allege, that Chase gave and Sydney Funding accepted and received fees, payments and other things of value in return for the referral of the Mortgage Loan by Sydney Funding to Chase.  Such giving accepting of the settlement agent fees and other things of value in return for the referral of the Mortgage Loan by Sydney Funding to Chase was in violation of 12 U.S.C. § 2607(a).

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

28. Plaintiffs are informed and believe, and thereon allege, that because of the forgery of Plaintiff Laura Nguyen's signature to one or more documents, and because of the failure to deliver required form under Truth-in-Lending Disclosure to the Plaintiffs prior to the closing of the Mortgage Loan, the value of Sydney Funding's mortgage brokering services and its settlement services provided by its wholly owned subsidiary, Nexus Escrow, was $ 0.00.  Plaintiffs' further allege that, since Sydney Funding and its subsidiary were paid and received a fee from Chase as mortgage broker in excess of $10,000.00, such payment to Sydney Funding and its subsidiary represented payment for services that were not actually performed in violation of 12 U.S.C. § 2607(b).

29. Sydney Funding's acceptance of a fee from Chase for performing broker services that were not actually performed and Chase's payment of that fee for broker activities represents an unlawful kickback and/or unearned fee under RESPA because the amount received by Sydney Funding and paid by Chase was not reasonably related to the performance of lawful services.

30. Plaintiffs are informed and believe, and thereon allege, that Chase should have known that Sydney Funding did not earn the broker fees because common industry practices are that lenders follow underwriting standards that demand a review of originations by mortgage brokers and, therefore, lenders typically know that brokers have performed the services required and in a lawful manner, Plaintiffs are informed and believe, and thereon allege, that if Chase had reviewed the loan origination documents properly, either before or after the closing of the Mortgage Loan, Chase would have learned of the obvious indications that Sydney Funding was not properly performing its role as a mortgage broker.

31. Plaintiffs also allege that neither Sydney Funding ever offered Plaintiffs the option to pay a lower amount of settlement fees and charges in addition to failing to disclose to Plaintiffs that Sydney Funding would also be performing services as

1   the Settlement Agent through its wholly owned subsidiary in connection with the

2   Mortgage Loan.

3   32.The agency responsible for enforcing RESPA and its implementing regulation,

4   Regulation X, the United States Department of Housing and Urban Development

5   ("HUD"), issued a Statement of Policy in 1999 establishing two –part test for

6   determining the legality of certain lender payment to mortgage brokers under

7   RESPA as follows:

8      (1) Whether goods or facilities were actually furnished or the services were

9      actually furnished or the services were actually performed for the

10     compensation paid, and;

11     (2) Whether the payments are reasonably related to the value of the goods or

12     facilities that were actually furnished or services that were actually

13     performed.

14  33.In 2001, HUD clarified its interpretation of §§ 2607(a) and (b) when it issued its

15  RESPA Statement of Policy 2001-1 entitled Clarification of Statement of Policy

16  1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance

17  Concerning Unearned Fees Under Section 8(b).  ("Statement of Policy 2001-1.)

18  HUD's 2001-1 Policy of Statement explains that the second prong of its two-part

19  test to determine the legality of lender payments to mortgage brokers may not be

20  satisfied when the loan brokers does not offer the borrower the option to pay a

21  lower amount of total fees upfront.

22  34.Plaintiffs are informed and believes, and thereon allege, that Chase and others

23  knowingly and willfully conspired and agreed among themselves to commit the

24  acts described of herein with the intent to deprive Plaintiff of an amount to be

25  determined and proven at trial but in an amount that exceeds $10,000.00.

26  35.Plaintiffs are informed and believe, and thereon allege, that Chase and its agent,

27  Sydney Funding, did the acts and things herein alleged pursuant to, and in

28  furtherance of, the conspiracy and above-alleged agreement.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

**COMPLAINT**

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

36. Plaintiffs are informed and believe, and thereon allege, that Chase and its agent, Sydney Funding, furthered the conspiracy by cooperation or lend aid and encouragement to, or ratified and adopted the acts of each other.

37. As a proximate result of the wrongful acts herein alleged, Plaintiffs has suffered damages in an amount to be determined and proven at trial but in an amount that exceed $10,000.00.

38. In conspiring and acting in concert as herein alleged, Chase, either directly or through the conduct, authorization or ratification by a Chase officer, director, or managing agent, acted willfully and with the intent to cause injury to the Plaintiff. Chase is guilty of malice, oppression, and/or fraud in conscious disregard of the Plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Chase and to deter others from engaging in similar conduct.

## FIRST CLAIM FOR RELIEF
### (Against Defendant Chase for Fraud)

39. Plaintiffs reallege and incorporate by reference in this Claim For Relief each allegation set forth in paragraph 1 through 35 above.

40. The false, fraudulent and/or deceitful representations previously alleged were knowingly false, fraudulent and/or deceitful when made by Chase and its agent with the intent that Plaintiffs would rely on such representations.

41. Plaintiff justifiably relied on the false, fraudulent and/or deceitful representations made by Chase and its agent and, as a result of such reliance; Plaintiffs (i) agreed to enter into the Mortgage Loan with Chase as the lender.

42. Such false, fraudulent and/or deceitful representations made by Chase and its agent were made and performed in a wanton, malicious and oppressive manner and in knowingly disregard of the rights of the Plaintiffs, and such false, fraudulent and/or deceitful representations were performed, authorized or ratified by an officer, director or managing agent of Chase and its agent.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

43. The false, fraudulent and/or deceitful representations made by Chase and its agent were made for the purpose of unjustly enriching Chase and its agent and that the Defendants were unjustly enriched by the false, fraudulent and deceitful representations.

44. As a direct and prximate result of the false, fraudulent and/or deceitful representations made by Chase and its agent, and the Plaintiffs' justifiable reliance thereon, Chase and its agent have been, and will be, unjustly enriched and the Plaintiffs have been damaged in an amount in excess of $10,000.00.

## SECOND CLAIM FOR RELIEF

### (Against Defendant Chase for Fraud by Forgery)

45. Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraph 1 through 41 above.

46. On or about December 7, 2007, Chase and/or its agent intentionally forged signature of the Plaintiff Laura Nguyen onto the Deed of Trust and other documents related to the Mortgage Loan with the intention of harming the Plaintiffs.

47. The forgery by Chase and/or its agent was undertaken as part of a scheme to (i) prevent Plaintiffs from knowing the true terms and conditions of the Mortgage Loan prior to entering into that Mortgage Loan and (ii) preventing Plaintiffs from rescinding the Mortgage Loan if and when they ever discover the true terms and conditions of the Mortgage Loan by using the forged deed of trust as the legal basis for arguing that the Plaintiffs' right to rescind the Mortgage Loan under federal law had expired.

48. Plaintiffs are informed and believe, and thereon allege, that Chase and/or its agent knew that (i) forged signatures of the Plaintiff Laura Nguyen on the Deed of Trust and other documents related to the Mortgage Loan, or (ii) knew of the forged signatures of the Plaintiff on the Deed of Trust, conspired to defraud the Plaintiffs for the reason that the forged signatures of the Plaintiff Laura Nguyen on the

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

Deed of Trust and the other documents related to the Mortgage Loan were undertaken to further the fraud of concealing from the Plaintiffs the true terms and conditions of the Mortgage Laon and to thereafter create and unlawful defense to any attempted rescission of the Mortgage Loan by the Plaintiffs in the event the Plaintiffs discovered the true terms and conditions of the Mortgage Loan and attempted to assert their rights of rescission under California and or federal law.

49. The forgery of Plaintiff Laura Nguyen's signature on the Deed of Trust, in addition to failure to provide Notice of Right to Cancel were made with the intent to deceive Plaintiffs and to deprive them of their rights under California and federal law.

50. At the time that the forgeries of Plaintiff Laura Nguyen' signatures and concealment from Plaintiff of the true terms and conditions of the Mortgage Loan, Plaintiffs were unaware of the fact that her signature had been, or were to be, forged on the Deed of Trust and other documents related to the Mortgage Loan and were unaware of the true terms and conditions of the Mortgage Loan.

51. Plaintiffs relied to their detriment on the aforementioned concealment of the true terms and conditions of the Mortgage Loan which concealment was effectuated by the withholding of the disclosure under the Truth-in-Lending as required by federal law and by forging the Plaintiffs' signatures on said Deed of Trust for the fraudulent purpose of using the forged Deed of Trust as a basis for depriving the Plaintiffs of their legal rights pursuant to California and federal law in the event the Plaintiffs learned the true terms and provisions of the Mortgage Loan.

52. Chase and/or its agent intentionally forged the signature of the Plaintiff on the Deed of Trust and other documents related to the Mortgage Loan proximately resulting in harm suffered by both Plaintiffs.

53. The aforementioned acts, omissions, and fraud by forgery conducted by Chase and/or its agent alleged above were fraudulent, malicious and oppressive conduct which subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

Plaintiffs' rights, and constituted despicable conduct by said Defendants with a willful and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages against said defendants.

### THIRD CLAIM FOR RELIEF

### (Against Defendant Chase for Forgery)

54. Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraph 1 through 50 above.

55. The act of forging the signature of the Plaintiff Laura Nguyen on the Deed of Trust and other documents related Mortgage Loan was conducted by Chase and/or its agent as part of an intentional scheme and conspiracy to deceive Plaintiffs in order to fraudulently induce Plaintiffs to enter into the Mortgage Loan because by forging Plaintiff Laura Nguyen's signature on Deed of Trust and other documents related to the Mortgage Loan, Chase and/or its agent would gain a material advantage over the Plaintiffs by making it difficult, perhaps impossible, for the Plaintiffs to successfully assert their rights under California and Federal law in the event Plaintiffs discovered the true terms and conditions of the Mortgage Loan.

56. The forgery by Chase and/or its agent of the Deed of Trust was part of a fraudulent scheme to conceal and suppress the truth of the terms and conditions of the Mortgage Loan from the Plaintiffs and the forgery of the Plaintiff Laura Nguyen's signature on the Deed of Trust constituted and artifice designed to deceive Plaintiffs.

57. The aforementioned acts, omissions, and forgery conducted by Chase and/or its agent alleged above were fraudulent, malicious and oppressive conduct which subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, and constituted despicable conduct by Chase and/or its agent with a willful and conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages against this Defendant.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

## FOURTH CLAIM FOR RELIEF

### (Against Defendant Chase, Chase Home Finance, Trustee Services for Rescission and Damages Pursuant to 12 U.S.C. § 1635, et.seq.)

58. Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraph 1 through 54 above.

59. The Mortgage Loan is subject to the federal Truth-in-Lending Act and its implementing regulation, Regulation Z, because the Borrower under the Mortgage Loan, Paul Nguyen, is an individual and not a corporation, partnership, or other entity, and because Plaintiff Paul Nguyen used the loan proceeds for personal, family, or household purposes, and because the amount borrowed was, and is, subject to a finance charge and is to be repaid in 5 or more installments, and because the Mortgage Loan is secured by Plaintiffs' principal dwelling. Furthermore, the Mortgage Loan is not subject to any of the exemptions set forth in the Truth-in-Lending Act and Regulation Z and it was not a loan for business purposes.

60. Because of the Mortgage Loan is subject to the Truth-in-Lending Act and Regulation Z, Chase was required to deliver to the Plaintiffs, among other things, Notice of Right to Cancel.  Chase failed to deliver the Notice of Right to Cancel to Plaintiff Laura Nguyen.

61. Therefore, the right to rescind the Mortgage Loan is extended to three-years.

62. Plaintiffs exercised its rights under California and federal laws by notify Chase, Chase Home Finance, and Trustee Services of rescission of the Mortgage Loan and tender under such rescission.

63. Chase, Chase Home Finance, and Trustee Services failed to take actions as required under the Truth-in-Lending Act and Regulation Z upon receipt of rescission of the Mortgage Loan.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

64. As a direct and proximate result of the violation of the Truth-in-Lending Acts and Regulation Z by Chase, Plaintiffs suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Against Defendant Chase for Damages
### Pursuant to 12 U.S.C. § 2607)

65. Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraph 1 through 61 above.

66. The Mortgage Loan is a federally related mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

67. Because the Mortgage Loan is subject to RESPA and Regulation X, all Defendants were required to comply with Section 8(a) and (b) of RESPA appearing at 12 U.S.C. § 2607(a) and (b). Section 8 violations are further defined by Regulation X and 24 C.F.R. § 3500.14 as "Prohibition against kickbacks and unearned fees."

68. Because Chase and/or its agent conspired to withhold, and did withhold, Notice of Right to Cancel, and because Chase and/or its agent conspired to withhold disclosure to Plaintiffs that Sydney Funding through its wholly owned subsidiary, Nexus Escrow, would be acting as the settlement agent in connection with the consummation of the Mortgage Loan, and because the forgery of the Plaintiff Laura Nguyen's signatures to the Deed of Trust, Plaintiffs allege that the actual value of Sydney Funding and its wholly owned subsidiary services was $0.00.

69. As a result of the value of Sydney Funding's services being $0.00, Chase and/or its agent violated Section 2607(b) of RESPA.

70. Plaintiffs allege that because value of service was $0.00, the payments by Chase to Sydney Funding and its subsidiary and any of such payments or portion thereof received are violation of Section 2607(a) of RESPA.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

71. As a direct and proximate result of the violations of RESPA and Regulation X by Chase and/or its agent, Plaintiff suffered damages in an amount to be proven at trial.

72. As a direct and proximate result of the violation of RESPA and Regulation X by Chase and/or its agent, this Defendant has been, and will be unjustly enriched and Plaintiffs have been damaged in excess of $20,000.00.

## FIFTH CLAIM FOR RELIEF
### (Against Defendant Chase, Chase Home Finance, and Trustee Services for Rescission Pursuant to California Law)

73. Plaintiffs reallege and incorporates by reference in this Claim for Relief each allegation set forth in paragraphs 1 through 69 above.

74. The Mortgage Loan is subject to the conditional right of rescission provided by the Truth-in-Lending Act which grants the Borrower and any owner (i) an unconditional right of rescission for the first three days following the consummation of the transaction, or (ii) a conditional right of rescission if the creditor fails to deliver certain forms and/or fails to disclose certain information. The statute put a 3-year time limit on the exercise of the conditional rescission right.

75. The Defendants failed to deliver Notice of Right to Cancel to Plaintiff Laura Nguyen, who is the owner of the subject property as required by the Truth-in-Lending Act. As the result of such failure, Plaintiffs are entitled to, and have, exercise their conditional right of rescission of the Mortgage Loan.

## SIXTH CLAIM FOR RELIEF
### (Against Defendant Chase Pursuant to California Unfair Business Practice Law Business and Professions § 17200)

76. Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraphs 1 through 72 above.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

77. Pursuant to California law, Sydney Funding acting as a mortgage broker on behalf of Plaintiffs owed fiduciary duties of loyalty and due care to the Plaintiffs.

78. Despite the fiduciary and statutory duties owed to the Plaintiffs by Sydney Funding and its wholly owned subsidiary, Sydney Funding engaged in deliberate actions and conduct in violation of those fiduciary and for the purpose of taking advantage of their relationship with the Plaintiffs by making false, fraudulent, and deceitful representations concerning the Mortgage Loan.

79. Sydney Funding and each of them, have falsely, fraudulently and deceitfully represented to the Plaintiffs as aforesaid which representations were relied upon by the Plaintiffs resulting in consummation of the Mortgage Loan and to the damage of Plaintiffs.  Chase violated the Consumer Credit Protection Act, as aforesaid.

80. Chase and/or its agent violated the Real Estate Settlement Procedures Act as set forth herein and the allegations of which are hereby incorporated in this cause of action by this reference.

81. Chase and/or its agent forged the signature of Plaintiff to the Deed of Trust.

82. Such unfair, fraudulent and deceptive acts and omissions, and violation of state law are unfair business practices and constitute a violation of California common law and California Business & Professions Code §§ 17200, et seq.  Plaintiffs reserve the right to identify additional unfair, fraudulent, or deceptive practices, or unlawful or unfair practices, by Defendants as may be established through discovery.

83. As direct and proximate result of the unfair, fraudulent, and deceptive conduct describe above, as well as the result of their unlawful and unfair business practices as described above, this Defendant has been and will be unjustly enriched.

84. Plaintiffs, pursuant to California Business & Professions Code § 17203, seek an order of this Court enjoining this Defendant from further withholding and

confiscating any of the monies, funds and property due to the Plaintiffs as a result of the unfair business practices alleged herein, and compelling this Defendant to:

a. Make restitution to Plaintiffs for all funds unfairly, unlawfully, fraudulently, and deceptively obtained and retained by Chase and/or its agent as a result of the wrongful acts as alleged herein and their violation of California common law and California Business &Professions Code §§ 17200 et seq.; and

b. Disgorge all revenues acquired and retained by Chase and/or its agent as a result of the unfair, fraudulent, deceptive, unlawful business practices alleged herein; and

c. To take steps and actions reasonably and sufficiently necessary to rescind the Mortgage Loan and to void any and all deeds of trust or other legal documents pertaining to the property securing the Mortgage Loan.

85. Plaintiffs are entitled to restitution of their property (tangible and intangible) and money and funds, as that property, money and funds existed prior to the wrongful actions and conduct of Chase and/or its agent.

86. Plaintiffs also seek such additional equitable relief as may be necessary to provide a complete remedy for Chase and/or its agent's wrongful actions and conduct, including without limitation, injunctive relief, restitution, and restoration of their unencumbered title interest in the real property.

87. Pursuant to federal law, Chase, acting as a lender, owed statutory duties to the Plaintiffs.

88. Pursuant to federal law, Sydney Funding and its subsidiary, owed statutory duties to the Plaintiffs.

89. Despite the statutory duties owed to the Plaintiffs by Chase, Chase violated those statutory duties and, as a result thereof, took advantage of its relationship with the Plaintiffs and this Defendant has been, and is being, unjustly enriched thereby.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

90. As a direct and proximate result of the breach of fiduciary duties committed by Chase's agent, this Defendant has been unjustly enriched, and the Plaintiffs have been damaged in an amount in excess of $25,000.00.

91. Chase and/or its agent, in committing wrongful acts described herein, acted with malice, fraud, and oppression toward Plaintiffs, in a conscious disregard of Plaintiffs' rights.

### SEVENTH CLAIM FOR RELIEF

### (Against Defendant Chase, and Trustee Services For Declaratory Relief)

92. Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraphs 1 through 88 above.

93. An actual controversy has arisen and now exists between the Plaintiffs and all defendants in that Chase failed to provide Plaintiffs with disclosures required by state and federal law in connection with the Mortgage Loan.  Plaintiffs further contend that they have the right to rescind and tender money received of the Mortgage Loan under state and federal law and have done so.  On information and belief, these Defendants took no steps to honor plaintiffs' request or cancel its security interest in the property as required by state and federal laws to rescind the Mortgage Loan.

94. The statute delineates a specific procedure to be followed when the debtor exercises its right of rescission. In particular, 12 U.S.C. § 1635(b) provides that upon receipt of notice of rescission, the creditor shall return all earnest money or down payments to the debtor and shall terminate its security interest in the property.

95. Thus, the statute contemplates a three-step sequence in which (i) the debtor notifies the creditor of exercise of rescission rights, (ii) the creditor tenders all payments received from the debtor and terminates its security interest in the residence, and (i) the debtor tenders the loan proceeds to the creditor.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

96. Plaintiffs rescinded the transaction on December 7, 2007 by delivering to Defendant, by certified mail, a written notice of rescission.

97. Subsequently, Plaintiffs offered to tender the loan proceed of the mortgage loan on December 7, 2007.

98. Defendants have failed to take the necessary and appropriate action to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z §226.23(d)(2).

99. Plaintiffs desire a judicial determination of their rights under state and federal law and that this Defendant account for and pay to Plaintiffs all money and property received by Chase and/or its agent or delivered to others resulting from the Mortgage Loan and terminating its security interest in the real property.

100. A judicial determination is necessary and appropriate at this time in order that Plaintiffs may determine his rights and that the obligations of Defendants will also be determined pursuant to the contract and California and federal law.

101. As a result of the aforesaid violations of TILA and Regulation Z, pursuant to 15 U.S.C. § 1635(a) and §1640(a), the Defendants are liable to the Plaintiffs for:

    a. Rescission of the transaction, including a declaration that the Plaintiffs are not liable for any finance charges or other charges imposed by the Defendants;

    b. Termination of any interest whatsoever in Plaintiffs property held by the Defendants;

    c. Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with the transaction;

    d. Statutory damages of $4,000 for each plaintiff (consisting of $2,000 for the disclosure violation and $2,000 for the failure to rescind);

    e. Forfeiture of return of any loan proceeds;

    f. Actual damages in an amount to be determined at trial; and

    g. Costs, including attorney's fees as allowed by TILA.

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

## EIGHTH CLAIM FOR RELIEF

## (Against Defendant Chase, and Trustee Services For PRELIMINARY INJUNCTION)

102.   Plaintiffs reallege and incorporate by reference in this Claim for Relief each allegation set forth in paragraphs 1 through 101 above.

103.   Plaintiffs move this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a Preliminary Injunction against the Defendants enjoining them from taking any action to transfer any interest putatively held by the Defendants in the NGUYEN residence located at 16141 Quartz Street, Westminster, CA or to encumber the Plaintiffs interest in that property. In support of their Motion, the Plaintiffs state as follows:

   a.  The Plaintiffs will suffer immediate and irreparable harm if the Defendants should transfer any interest in the NGUYEN property;

   b.  Plaintiffs have no adequate remedy at law should the Defendants affect such a transfer;

   c.  Plaintiffs are likely to prevail on the merits of their claims;

   d.  The balance of the hardships tips decidedly in favor of granting the requested injunction, inasmuch as the cost to the Defendants of enjoining any such transfer is negligible when compared to the potential harm the Plaintiffs face if they lose their dwelling and property prior to these proceedings ending.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against these Defendants, as to all causes of actions, as follows:

1.  For general and special damages according to proof;

2.  For exemplary and punitive damages;

3.  For Plaintiffs' reasonable attorneys' fees and costs necessary to obtain these relief;

4.  For rescission of the Mortgage Loan;

5.  For an order voiding any Deed of Trust in connection with the Mortgage Loan.

6.  For permanent injunction against this Defendant, its subsidiary, affiliates, successors, agents, servants, officers, directors, employees, and all persons acting in concert with them, directly or indirectly, from engaging in the improper, unlawful, unfair, fraudulent, and/or deceptive conduct as descried above and according to proof;

7.  For an order of restitution requiring this Defendant to disgorge all revenues acquired from Plaintiffs by means of unlawful, unfair, fraudulent and/or deceptive acts or practices as more fully described above and according to proof;

8.  For prejudgment interest as allowed by law;

9.  For an order that this Defendant involuntary trustee for the proceeds and property resulting from Chase and/or its agent's wrongful actions of all money, proceeds and property wrongfully acquired by them;

10. For declaration and order that this Defendant release and reconvey any deed of trust or other document signed or entered into and subsequently recorded in connection with the Mortgage Loan;

11. For an order voiding any deed of trust and any other document signed or entered into by either or both of the Plaintiffs in connection with the mortgage loan;

12. For an order requiring this Defendant to return all monies, proceeds, payments, funds, revenues, fees and the like acquired from either Plaintiff as a result of or arising from the Mortgage Loan;

13. For an order Forfeiture of return of any loan proceeds;

14. For statutory damages according to proof;

15. For costs of suit herein incurred; and

16. For such other and further relief as this Court may deem just and proper.

**COMPLAINT**

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

1

Dated: 06/25/2009                              Respectfully Submitted;

2

3

4

5

6                                              Paul Nguyen & Laura Nguyen
                                               Defendants in Pro Persona
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -
**COMPLAINT**

PAUL NGUYEN
16141 QUARTZ STREET
WESTMINSTER, CA 92683
(714) 360-7602

# EXHIBIT A

# NOTE

December 07, 2007          Westminster                    CALIFORNIA
    [Date]                     [City]                                 [State]

16141 Quartz St, Westminster, CA  92683

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 250,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
**Chase Bank USA, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.925          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on **February 01, 2008**          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 01, 2038**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 770 **The City Drive, Suite 2000**
**Orange, CA 92868**                              or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,998.08          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

1096946990

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0005)          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments   See Attached Rider

If the Note Holder has not received the full amount of any monthly payment by the end of **XX**           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **XX**           % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

1096946990

MP -5N (0005)

Form 3200 1/01
Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Paul Nguyen                     -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

*[Sign Original Only]*

1096946990

Form 3200 1/01

-5N (0005)

Recording Requested By:
Chase Bank USA, N.A.

Return To:
Chase USA c/o CHF, LLC

Attn: Trailing Documents
700 Kansas Lane Mail Code: LA4-4106
Monroe, LA 71203

Prepared By:
Ramirez, Hector

---

———————————————————[Space Above This Line For Recording Data]———————————————————

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated December 07, 2007
together with all Riders to this document.
(B) "Borrower" is  Paul Nguyen, and Laura Nguyen, Husband and Wife, as Joint Tenants

Borrower's address is 16141 Quartz St
Westminster, CA  92683            . Borrower is the trustor under this Security Instrument.
(C) "Lender" is Chase Bank USA, N.A.

Lender is a National Association
organized and existing under the laws of United States

1096946990

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3005  1/01

(VMP) -6(CA) (0207)
Page 1 of 15          Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 200 White Clay Center Drive
Newark, DE  19711
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is Fidelity National

(E) "Note" means the promissory note signed by Borrower and dated December 07, 2007
The Note states that Borrower owes Lender Two Hundred Fifty Thousand
and 00/100ths                                                        Dollars
(U.S. $250,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 01, 2038
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                           of Orange                                        :
          [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT A

Parcel ID Number: 107-903-44                      which currently has the address of
16141 Quartz St                                                              [Street]
Westminster                                       [City], California 92683-0000 [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

        UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

        1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

1096946990

Initials: _____

VMP®-6(CA) (0207)                  Page 3 of 15                                      Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

1096946990

Initials: _P P_

-6(CA) (0207)            Page 4 of 15                                    Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

1096946990

Initials: _____

-6(CA) (0207)       Page 6 of 15       Form 3005   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

1096946990

Initials: _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

1096946990

Initials: _____

Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

1096946990

Initials: _____

-6(CA) (0207)

Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____          _____ (Seal)
                                     Paul Nguyen                 -Borrower

_____

                                     _____ (Seal)
                                                                  -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                        -Borrower

1096946990

 -6(CA) (0207)                    Page 14 of 15                    Form 3005   1/01

State of California
County of   *ORange*                                    } ss.

On   *12/07/2007*                    before me, *Joseph Son Cao Tran, Notary Public*
                                                              personally appeared
Paul Nguyen

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____  *Joseph Son Cao Tran , Notary Public*
                                                              (Seal)

JOSEPH SON CAO TRAN
Commission # 1470177
Notary Public - California
Orange County
My Comm. Expires Feb 13, 2008

1096946990

Initials: _____

Form 3005   1/01

-6(CA) (0207)

# EXHIBIT B

3014 6467-1002

Recording Requested By:
Chase Bank USA, N.A.

Return To:
Chase USA c/o CHF, LLC

Attn: Trailing Documents
700 Kansas Lane Mail Code: LA4-4106
Monroe, LA 71203

Prepared By:
Ramirez, Hector

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||    51.00

**2007000731120 04:17pm 12/12/07**
119 59 D11 16

0.00 0.00 0.00 0.00 45.00 0.00 0.00 0.00

101-903-44

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 07, 2007
together with all Riders to this document.
**(B) "Borrower"** is  Paul Nguyen, and Laura Nguyen, Husband and Wife, as Joint
Tenants

Borrower's address is 16141 Quartz St
Westminster, CA 92683                    . Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is National Association

Lender is a **National Association**
organized and existing under the laws of **United States**

1096946990

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3005 1/01

-6(CA) (0207)

Page 1 of 15                    Initials: PP  N

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 200 White Clay Center Drive
Newark, DE   19711
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Fidelity National

**(E) "Note"** means the promissory note signed by Borrower and dated December 07, 2007
The Note states that Borrower owes Lender Two Hundred Fifty Thousand
and 00/100ths                                                          Dollars
(U.S. $250,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than January 01, 2038               .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

1096946990

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                          of Orange                                          :
    [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
**SEE ATTACHED EXHIBIT A**

Parcel ID Number: **107-903-44**                         which currently has the address of
**16141 Quartz St**                                                           [Street]
**Westminster**                                   [City], California **92683-0000** [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

1096946990

Initials: _JP_ _N_

-6(CA) (0207)                         Page 3 of 15                                   Form 3005   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

1096946990

Initials: _____

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

    **13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

    Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

    **14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

    If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

    **15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

1096946990



Initials: _NP_  _TN_

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

1096946990

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                         Paul Nguyen                        -Borrower


_____          _____ (Seal)
                                                         LAURA  NGUYEN                   -Borrower


_____ (Seal)     _____ (Seal)
                          -Borrower                                               -Borrower


_____ (Seal)     _____ (Seal)
                          -Borrower                                               -Borrower


_____ (Seal)     _____ (Seal)
                          -Borrower                                               -Borrower

1096946990

State of California
County of *Orange*                                    } ss.

On  *12/07/2007*          before me. *Joseph Son Cao Tran, Notary Public*
                                                   personally appeared
Paul Nguyen      *and Laura Nguyen*

~~, personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____   *Joseph Son Cao Tran , Notary Public*
                                                   (Seal)

JOSEPH SON CAO TRAN
Commission # 1470177
Notary Public - California
Orange County
My Comm. Expires Feb 13, 2008

1096946990

Initials: _____

Page 15 of 15                                      Form 3005   1/01

-6(CA) (0207)

Order No. 30146667

# LEGAL DESCRIPTION

## EXHIBIT "ONE"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF WESTMINSTER, COUNTY OF Orange, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 44 OF TRACT NO. 8977, IN THE CITY OF WESTMINSTER, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 369, PAGE(S) 46 AND 47 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET WITHOUT ANY RIGHT TO ENTER UPON THE SURFACE OR THE SUBSURFACE OF SAID LAND ABOVE A DEPTH OF 500 FEET, AS PROVIDED IN THE DEED RECORDED IN BOOK 11115 PAGE 1980 OF OFFICIAL RECORDS.

Assessor's Parcel No: 107-903-44

COUNTY CLERK-RECORDER



ORANGE COUNTY
STATE OF CALIFORNIA

THIS IS A TRUE CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL,
IMPRINTED IN PURPLE, OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: _____
CERTIFICATION FEE: _____

# EXHIBIT C

Paul Nguyen
16141 Quartz Street
Westminster, CA 92683
(714) 596-9218


Date:  04/01/2009


Chase Home Finance LLC
c/o First American Loanstar Trustee Services
P.O. Box 961253
Forth Worth, TX 76161


**U.S. Post Certified Mail # 7009 0080 0000 6412 7695.**


Re:    TILA Rescission.
       Loan No. 0024826570.
       Borrower Paul Nguyen,
       Homeowner Paul Nguyen and Laura Nguyen, Husband and Wife as Joint Tenant.
       Property address 16141 Quartz Street, Westminster, CA 92683.

Dear Sir or Madam:

       Pursuant to the provisions of the <u>Truth and Lending Act</u> ("TILA"), 15 U.S.C. Section
1635, the above-captioned homeowner hereby rescinds the above-referenced loan, due to
violations of TILA, including but not limited to the unlawful failure to give timely and proper
notices required under TILA.

       This rescission is based on the provisions of TILA, including but not limited to 15 U.S.C.
1635(a) and 12 C.F.R. 226.23(b)(5).

       Please contact me at (714) 360-7602 regarding this matter. Thank you.

Sincerely,



Paul Nguyen

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

FORT WORTH TX 76161

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.42 |
| Certified Fee | | $2.70 |
| Return Receipt Fee (Endorsement Required) | | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.32 |

0478

Postmark Here

WESTMINSTER 13 APR 6 2009

04/06/2009

Sent To *CHASE HOME FINANCE LLC*
Street, Apt. No.; or PO Box No. *PO BOX 961253*
City, State, ZIP+4 *FORTH WORTH TX 76161*

7009 0080 0000 6412 7695

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*CHASE HOME FINANCE LLC*
*c/o FIRST AMERICAN LOANSTAR*
*PO BOX 961253*
*FORTH WORTH TX 76161*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Michael Cordeli*    ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:    ☐ No

APR 0 9 2009

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)       7009 0080 0000 6412 7695

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

Paul Nguyen
16141 Quartz Street
Westminster, CA 92683
(714) 596-9218


Date: 04/01/2009


Chase Bank USA, N.A.
770 The City Drive, Suite 200
Orange, CA 92868


**U.S. Post Certified Mail # 7009 0080 0000 6412 7688.**


Re:    TILA Rescission.
       Loan No. 0024826570.
       Borrower Paul Nguyen,
       Homeowner Paul Nguyen and Laura Nguyen, Husband and Wife as Joint Tenant.
       Property address 16141 Quartz Street, Westminster, CA 92683.

Dear Sir or Madam:

    Pursuant to the provisions of the Truth and Lending Act ("TILA"), 15 U.S.C. Section 1635, the above-captioned homeowner hereby rescinds the above-referenced loan, due to violations of TILA, including but not limited to the unlawful failure to give timely and proper notices required under TILA.

    This rescission is based on the provisions of TILA, including but not limited to 15 U.S.C. 1635(a) and 12 C.F.R. 226.23(b)(5).

    Please contact me at (714) 360-7602 regarding this matter. Thank you.

Sincerely,



Paul Nguyen

**U.S. Postal Service ™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

COLUMBUS OH 43224

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.42 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.32 |

0478
WESTMINSTER, CA 92683
Postmark
Here
2009
USPS
04/06/2009

Sent To JPMorgan Chase Bank
Street, Apt. No.; or PO Box No. PO Box 24573
City, State, ZIP+4 Columbus OH 43224

7009 0080 0000 6412 7671

PS Form 3800, August 2006        See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JPMorgan Chase Bank
C/o Chase Home Finance
PO Box 24573
Columbus OH 43224

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   Joo Cowans        ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
APR

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

OAKLAND PARK
COLS.
USPS

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)      7009 0080 0000 6412 7671

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Paul Nguyen
16141 Quartz Street
Westminster, CA 92683
(714) 596-9218


Date: 04/01/2009


JPMorgan Chase Bank, NA
c/o Chase Home Finance LLC
PO Box 24573
Columbus, OH 43224


**U.S. Post Certified Mail # 7009 0080 0000 6412 7671.**


Re:    TILA Rescission.
        Loan No. 0024826570.
        Borrower Paul Nguyen,
        Homeowner Paul Nguyen and Laura Nguyen, Husband and Wife as Joint Tenant.
        Property address 16141 Quartz Street, Westminster, CA 92683.

Dear Sir or Madam:

Pursuant to the provisions of the Truth and Lending Act ("TILA"), 15 U.S.C. Section 1635, the above-captioned homeowner hereby rescinds the above-referenced loan, due to violations of TILA, including but not limited to the unlawful failure to give timely and proper notices required under TILA.

This rescission is based on the provisions of TILA, including but not limited to 15 U.S.C. 1635(a) and 12 C.F.R. 226.23(b)(5).

Please contact me at (714) 360-7602 regarding this matter. Thank you.

Sincerely,


Paul Nguyen

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

ORANGE CA 92868

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.42 |
| Certified Fee | | $2.70 |
| Return Receipt Fee (Endorsement Required) | | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.32 |

Postmark Here
WESTMINSTER CA 0478
13 APR 2009
04/06/2009

Sent To CHASE BANK USA NA
Street, Apt. No.; or PO Box No. 770 THE CITY DR SUITE 700
City, State, ZIP+4 ORANGE CA 92858

PS Form 3800, August 2006        See Reverse for Instructions

7009 0080 0000 6412 7688

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CHASE BANK USA NA
770 THE CITY DR #200
ORANGE CA 92868

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                     4/7/09

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

ORANGE APR 17 2009 USPS

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7009 0080 0000 6412 7688

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

# CHASE ⬡

**Chase Home Finance LLC**
3415 Vision Drive
Columbus, OH  43219-6009
(800) 548-7912 Customer Care
(800) 582-0542 TDD / Text Telephone

April 22, 2009

Paul Nguyen
16141 Quartz Street
Westminster, CA  92683

Re:  Loan #0024826570

Dear Mr. Nguyen:

This letter is in response to the correspondence we received on 4/8/09, addressed to
Chase Home Finance ("Chase"), about your mortgage loan serviced by Chase.

No evidence has been given for your request to rescind  As such, your request to rescind this
loan is denied.

Any documents requested but not included with this package are considered proprietary, and will
not be provided.

If you (or your client) is experiencing a financial hardship, you may contact our Loss Mitigation
Department at 1-877-383-1563 for assistance.

Chase's goal is to provide the highest level of quality service.  If you have any questions, you
can contact Chase Customer Care at 1-866-371-3754.

This letter shall not be deemed to be a waiver of any rights or remedies, which are expressly
reserved.

Sincerely,

*Customer Care*

Chase Home Finance
Enclosures

# EXHIBIT D

Paul Nguyen & Laura Nguyen
16141 Quartz Street
Westminster, CA 92683

April 12, 2009

Chase Bank USA, N.A.
770 The City Drive, Suite 2000
Orange, CA 92868

**U.S. Post Certified Mail.**

Re:     Loan No. 0024826570,  Borrower: Paul Nguyen.
          Property address: 16141 Quartz Street, Westminster, CA 92683.

Dear Sir or Madam:

    This serves to present Paul Nguyen and Laura Nguyen tender offer to Chase Bank USA, N.A. based on statutory right to cancel present mortgage loan No. 0024826570. See prior letter which provides you with notice of rescission/cancellation of said loan.

    Pursuant to this rescission letter, we are legally entitled to cancel our loan given that the TILA "Notices of Right to Cancel" given at the time of the closing of the refinance mortgage loan on the 16141 Quartz St., Westminster, CA 92683 property were legally deficient as they failed to contain one or more required material terms. Specifically, lender's failure to provide the "Notices of Right to Cancel" to Laura Nguyen, who is the joint tenant of the mentioned property, which constitutes a clear technical violation of TILA and understated finance charges.

    Based on the foregoing, we cancel the refinance loan under the provisions of the Truth in Lending Act and present a tender offer of $250,000.00 to Chase Bank USA N.A., as the current holder of her mortgage loan; conditioned upon Chase Bank returning money that has been given to anyone in connection with the transaction and payment made since inception of this loan. Such return of fund is calculated to be $ 57,135.66.  In addition, statutory civil penalty for violation of TILA is calculated to be $4,000.00.

    Please contact me as soon as possible to complete the tender based upon our rescission notification.  Thank you.

Sincerely,

Paul Nguyen

Laura Nguyen



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

ORANGE CA 92868

| | | |
|---|---|---|
| Postage | $ | $0.42 | 0481 |
| Certified Fee | $2.70 | 08 |
| Return Receipt Fee (Endorsement Required) | $0.00 | |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | $3.12 | |

7009 0080 0000 6413 8578

Sent To *CHASE BANK USA NA*
Street, Apt. No.; or PO Box No. *1700 THE CITY DR # 2000*
City, State, ZIP+4 *ORANGE CA 92868*

PS Form 3800, August 2006                    See Reverse for Instructions

Paul Nguyen & Laura Nguyen
16141 Quartz Street
Westminster, CA 92683


Date: 04/12/2009


Chase Bank USA, N.A.
770 The City Drive, Suite 2000
Orange, CA 92868


**U.S. Post Certified**


Re:   TILA Rescission and Offer to Tender.
      Loan No. 0024826570.
      Borrower Paul Nguyen,
      Homeowner Paul Nguyen and Laura Nguyen, Husband and Wife as Joint Tenant.
      Property address 16141 Quartz Street, Westminster, CA 92683.

Dear Sir or Madam:

Pursuant to the provisions of the Truth and Lending Act ("TILA"), 15 U.S.C. Section 1635, the above-captioned homeowner hereby rescinds the above-referenced loan, due to violations of TILA, including but not limited to the unlawful failure to give timely and proper notices required under TILA.

This rescission is based on the provisions of TILA, including but not limited to 15 U.S.C. 1635(a) and 12 C.F.R. 226.23(b)(5).

I hereby offer to tender of money.  Please contact me at (714) 360-7602 regarding this matter. Thank you.

Sincerely,


Paul Nguyen


Laura Nguyen



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.42 |
| Certified Fee | | $2.70 |
| Return Receipt Fee (Endorsement Required) | | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $3.12 |

ORANGE, CA 92868

0481

04/13/2009

Sent To  *CHASE BANK USA N/A*
Street, Apt. No.; or PO Box No.  *710 TH CITY DR #2002*
City, State, ZIP+4  *ORANGE CA 92868*

7009 0080 0000 6413 8509

PS Form 3800, August 2006          See Reverse for Instructions

Paul Nguyen & Laura Nguyen
16141 Quartz Street
Westminster, CA 92683
(714) 596-9218


Date:  04/01/2009


JPMorgan Chase Bank, NA
c/o Chase Home Finance LLC
PO Box 24573
Columbus, OH 43224


**Sent via Certified Mail**

### QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

Reference:      Account # 0024826570 (hereinafter the subject loan and is the reference
                for all questions and requests described below).

Dear Sir or Madam:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I have reason to believe that the loan terms were misrepresented to me at the time of application and further obscured and/or modified prior to signing. I believe that our income was inflated on the application. I also have reason to believe that certain statements were not provided for my approval prior to closing, and that signatures may have been forged on various documents. It is also my belief that certain documents may have not presented at all. Additionally, I believe that a notary was not present to witness my signatures on several pertinent documents and that this transaction did not take place in a legitimate title/escrow/real-estate office with any title/escrow/real-estate professionals therefore leaving us ill advised at the time of closing.

I hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding account # 0024826570. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased the amounts of monthly payments;
- Increased the principal balance I owe;
- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account; and/or
- Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account #0024826570 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth in Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by myself and others to ensure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;
2. That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;
3. That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;
4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;
5. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;
6. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

QUALIFIED WRITTEN REQUEST                                    Page | 4
April 1, 2009

7. That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;
8. That interest and principal have been properly calculated and applied to this loan;
9. That any principal balance has been properly calculated, amortized and accounted for;
10. That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, <u>certified</u>, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account #0024826570:

1. Any certificated or uncertificated security used for the funding of this account;
2. Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;
3. Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;
4. Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;
5. Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;
6. Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;
7. Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;
8. Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

QUALIFIED WRITTEN REQUEST                                    Page | 5
April 1, 2009

9.  Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11. Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12. Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13. Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

Please also send me copies, front and back, of:

1.  Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter;

2.  Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note;

3.  Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4.  Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note;

5.  Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note;

6.  Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note;

7.  Any documentation evidencing the Mortgage/Deed of Trust is **not** a constructive trust or any other form of trust;

8.  All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9.  All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10. All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that

QUALIFIED WRITTEN REQUEST                                   Page | 6
April 1, 2009

    secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

11. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14. All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17. All letters, statements and documents sent to me by your company.

18. All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

19. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20. All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22. All copies of property inspection reports, appraisals, BPOs and reports done on my property.

23. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

QUALIFIED WRITTEN REQUEST
April 1, 2009

27. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

**In regards to Account Accounting and Servicing Systems:**

1. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.
2. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.
3. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

**In regards to Debits and Credits:**

1. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.
2. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.
3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.
4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

**In regards to Mortgage and Assignments:**

1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?
2. If not, why?
3. Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

QUALIFIED WRITTEN REQUEST                                          Page | 8
April 1, 2009

4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5. If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2. Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4. Are late fees considered interest? Yes or No?

5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7. If yes, please describe what expenses or damages were charged or assessed to this account.

8. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

9.  Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.
10. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.
11. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.
12. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.
13. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.
14. Has interest been charged on any late fee assessed or charged to this account? Yes or No?
15. Is interest allowed to be assessed or charged on late fees to this account? Yes or No?
16. Have any late charges been assessed to this account? Yes or No?
17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?
18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.
19. Have late charges been collected on this account from the inception of this account to the present date? Yes or No?
20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1.  Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?
2.  If your answer is no, you can skip the rest of the questions in this section concerning property inspections.
3.  If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.
4.  Please tell me the price charged for each property inspection.
5.  Please tell me the date of each property inspection.
6.  Please tell me the name and address of each company and person who conducted each property inspection on my property.
7.  Please tell me why property inspections were conducted on my property.
8.  Please tell me how property inspections are beneficial to me.

QUALIFIED WRITTEN REQUEST                                    Page | 10
April 1, 2009

9.  Please tell me how property inspections are protective of my property.
10. Please explain to me your policy on property inspections.
11. Do you consider the payment of inspection fees as a cost of collection? Yes or No?
12. If yes, why?
13. Do you use property inspections to collect debts? Yes or No?
14. Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe? Yes or No?
15. If yes, please answer when and why?
16. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.
17. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?
18. If yes, why?
19. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?
20. If yes, why?
21. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.
22. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.
23. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?
24. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?
25. Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?
26. If yes, when and how much was charged?
27. Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?
28. How much total in inspection fees has been assessed to this account from the inception of this account to the present date?
29. How much total in inspection fees has been collected on this account from the inception of this account to the present date?
30. Please forward to me copies of all property inspections made on my property in this mortgage account file.
31. Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1.  Have any BPOs (Broker Price Opinions) been conducted on my property? Yes or No?

QUALIFIED WRITTEN REQUEST                                          Page | 11
April 1, 2009

2.  If your answer is no, you can skip the rest of the questions in this section concerning BPOs.
3.  If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.
4.  Please tell me the price of each BPO.
5.  Please tell me who conducted the BPO.
6.  Please tell me why BPOs were conducted on my property.
7.  Please tell me how BPOs are beneficial to me.
8.  Please tell me how BPOs are protective of my property.
9.  Please explain your policy on BPOs.
10. Have any BPO fees been assessed to this account? Yes or No?
11. If yes, how much in total BPO fees have been charged to this account?
12. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee from me.
13. Please send to me copies of all BPO reports that have been done on my property.
14. Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Servicing:**

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1.  Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?
2.  Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?
3.  Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.
4.  Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.
5.  Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.
6.  Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.
7.  Since the inception of this account, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8.  Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9.  Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11. Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12. Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13. Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14. Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17. How much was paid for this individual mortgage account by you?

18. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20. Who did you issue a check or payment to for this mortgage loan?

21. Please provide me with copies of the front and back of the canceled check.

22. Did any investor approve of the foreclosure of my property? Yes or No?

23. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24. Please identify all persons who approved the foreclosure of my property.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

### Default Provisions under this QUALIFIED WRITTEN REQUEST

JPMorgan Chase Bank, N.A. or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Paul Nguyen and Laura Nguyen or any property or collateral connected to Paul Nguyen and Laura Nguyen or account #0024826570 and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1. Paul Nguyen and Laura Nguyen's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment JPMorgan Chase Bank, N.A. may have or may have had in connection with account #0024826570 and any property and/or real estate connected with account #0024826570.
2. Paul Nguyen and Laura Nguyen's right to have any certificated or uncertificated security re-registered in Paul Nguyen and Laura Nguyen's, and only Paul Nguyen and Laura Nguyen's name.
3. Paul Nguyen and Laura Nguyen's right of collection via JPMorgan Chase Bank, N.A.'s liability insurance and/or bond.
4. Paul Nguyen and Laura Nguyen's entitlement in filing and executing any instruments, as power of attorney for and by JPMorgan Chase Bank, N.A., including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where JPMorgan Chase Bank, N.A. is located.
5. Paul Nguyen and Laura Nguyen's right to damages because of JPMorgan Chase Bank, N.A.'s wrongful registration, breach of intermediary responsibility with regard to Paul Nguyen and Laura Nguyen's asset by JPMorgan Chase Bank, N.A. issuing to Paul Nguyen and Laura Nguyen a certified check for the original value of Paul Nguyen's monetary instrument.
6. Paul Nguyen and Laura Nguyen's right to have account #0024826570 completely set off because JPMorgan Chase Bank, N.A.'s wrongful registration, breach of intermediary

responsibility with regard to Paul Nguyen and Laura Nguyen's monetary instrument/asset by JPMorgan Chase Bank, N.A. sending confirmation of set off of wrongful liability of Paul Nguyen and Laura Nguyen and issuing a certified check for the difference between the original value of Paul Nguyen and Laura Nguyen's monetary instrument/asset and what Paul Nguyen and Laura Nguyen mistakenly sent to JPMorgan Chase Bank N.A. as a payment for such wrongful liability.

JPMorgan Chase Bank N.A. or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for JPMorgan Chase Bank N.A. in accordance with JPMorgan Chase Bank N.A.'s Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as JPMorgan Chase Bank N.A.'s judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When JPMorgan Chase Bank N.A. fails by not rebutting to any part of this RESPA REQUEST, JPMorgan Chase Bank N.A. agrees with the granting unto Paul Nguyen and Laura Nguyen's unlimited Power of Attorney and any and all full authorization in signing and endorsing JPMorgan Chase Bank N.A.'s name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by JPMorgan Chase Bank N.A. waives any and all claims of Paul Nguyen and Laura Nguyen, and/or defenses and remains in effect until the satisfaction of all obligations by Paul Nguyen and Laura Nguyen have been satisfied.

Sincerely,

Paul Nguyen



# U.S. Postal Service™
# CERTIFIED MAIL™ RECEIPT
## (Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**COLUMBUS, OH 43224**

OFFICIAL USE

| | |
|---|---|
| Postage | $ $1.17 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $3.87 |

Postmark Here   APR 27 2009

04/27/2009 USPS

7009 0080 0000 5415 5403

Sent to  *JP MORGAN CHASE BANK*
*c/o CHASE HOME FINANCE LLC*

Street, Apt. No.; or PO Box No.  *P.O. Box 24575*

City, State, ZIP+4  *Columbus OH 43224*

PS Form 3800, August 2006          See Reverse for Instructions